UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MAKUSHA GOZO, | Case No. 24-CV-1193 (PAM/JFD) |
| Petitioner, | |
| v. | ORDER AND<br>REPORT AND RECOMMENDATION |
| SKILLET INC., WARDEN, KANDIYOHI COUNTY JAIL, AND MAYORKAS, | |
| Respondents. | |

This matter is before the Court on Plaintiff Makusha Gozo's (1) Emergency Motion for Injunctive or Declaratory Relief received on April 5, 2024 (Dkt. 1 ("Complaint")); (2) Motion for 42 U.S.C. § 1997e(a) Exhaustion (Dkt. 3 ("Exhaustion Motion")); (3) Emergency Motion for Injunctive or Declaratory Relief received on April 10, 2024 (Dkt. 5 ("Injunction Motion")); (4) Motion to Proceed in Forma Pauperis (Dkt. 7 ("IFP Motion")); (5) Motion to Amend to Emergency Motion for Injunctive Relief or Declaratory Relief (Dkt. 9 ("Motion to Amend")); (6) Amendment to Emergency Motion for Injunctive or Declaratory Relief (Dkt. 11 ("Amendment")); (7) Motion to Amend Defendant Names (Dkt. 13 ("Second Motion to Amend")); and (8) second Motion to Proceed In Forma Pauperis (Dkt. 15 ("Second IFP Motion")). For the following reasons, the Court grants the Motion to Amend and Amendment (as discussed below), denies the Second Motion to Amend as moot, recommends dismissing this action in its entirety, and recommends denying the Exhaustion Motion, Injunction Motion, IFP Motion, and Second IFP Motion.

## I. Background

This matter commenced on April 5, 2024, when the Court received the Complaint. (*See* Dkt. No. 1) At that time, as the Court understands it, federal authorities were detaining Mr. Gozo at the Kandiyohi County Jail ("KCJ") pending his potential removal to Zimbabwe. (*See, e.g.*, Compl. 1; Dkt. 1-3 at 1 (envelope showing Mr. Gozo's then-current address and listing him as "ICE Detainee").) While Mr. Gozo titled this filing "Emergency Motion for Injunctive or Declaratory Relief," it provides a "statement of facts" and relief requests, so the Court construes it as a complaint for present purposes. *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting need for courts to construe pro se filings liberally (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Smith v. Andrews*, 75 F.4th 805, 808 (8th Cir. 2023) (making same point (quoting *Erickson*)).

The Complaint seems to name four defendants. "Skillet Inc.," which appears to be a contractor used at the KCJ to handle meals for prisoners and/or detainees. (Compl. 1.) "Warden, Kandihoyi County Jail" could mean either KCJ's warden or both the warden and KCJ itself, so the Court assumes Mr. Gozo meant to name both. (*Id.*) Finally, Mr. Gozo names "DHS Secretary Mayorkas," presumably meaning Alejandro Mayorkas, secretary of the U.S. Department of Homeland Security. (*Id.*)

The Complaint alleges that after being detained in late March 2024, Mr. Gozo "informed the Defendants that he strictly adheres to [a] Kosher Diet," and the Defendants at the time possessed "records" showing Mr. Gozo's adherence to this diet. (*Id.* at 2.) Nevertheless, Mr. Gozo claims, he did not get kosher meals. (*See id.*) The timeframe here is unclear; it appears that Mr. Gozo wrote the Complaint on or about April 2, 2024, and

2

apparently had not received kosher meals at KCJ since being detained. (*See id.* at 2, 5.) Mr. Gozo also contends that Defendants also failed to provide him "condiments such as sugar." (*Id.* at 2.) He claims that this caused him "malnutrition and its physical harm ill effects." (*Id.* at 5.)

Mr. Gozo purports to bring claims against Defendants under the Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488 (codified as amended in scattered sections of 5 and 42 U.S.C.) ("RFRA"), the U.S. Constitution's First Amendment, and the Religious Land Use and Institutionalized Persons Act of 2000, Pub. L. No. 106-274, 114 Stat. 803 (codified as amended in scattered sections of 42 U.S.C.) ("RLUIPA"). (*See* Compl. 3–4.) For relief, Mr. Gozo asks the Court to "direct the Defendants to permit [Mr. Gozo] to receive his Kosher meals, as well as adequate nutrition." (*Id.*) He also asks for $6 million in various forms of damages. (*Id.*)

After filing the Complaint, Mr. Gozo has made numerous supplemental (often repetitive) filings.

- The Exhaustion Motion asks the Court to find that he has exhausted his relevant administrative remedies for purposes of 42 U.S.C. § 1997e(a). (*See* Exhaustion Mot. 1.)

- The Injunction Motion appears to be a "corrected copy" of the Complaint. (*See* Dkt. 5-1 at 1; *compare, e.g.*, Inj. Mot. 2 *with* Compl. 2.)

- The IFP Motion and the Second IFP Motion both ask the Court to let Mr. Gozo proceed *in forma pauperis* ("IFP") in this action. (*See* IFP Mot. 1; Second IFP Mot. 1.)

- The Motion to Amend is not entirely clear, but apparently asks the Court to change the list of this action's defendants. (*See* Mot. to Amend 1; Dkt. No. 9-2 (referring to filing as "corrected copy").) Submitted alongside the Motion to Amend, the Amendment makes certain

- factual assertions—in particular, Mr. Gozo claims that as of April 22, 2024, he had been "denied his Passover meals, in addition to being denied his full Kosher diet." (Amend. 2.) The Amendment also provides further information on Mr. Gozo's wish to change this action's defendant roster. (*See id.*)

- The Second Motion to Amend again expresses Mr. Gozo's wish to add defendants to this action. (*See* Second Mot. to Amend. 1.)

On April 29, 2024, Mr. Gozo informed the Court that he has a new address in Texas. As best as the Court can tell, given this address, Mr. Gozo is no longer being detained by U.S. Immigration and Customs Enforcement ("ICE").

## II.    Analysis

### A.    Standards of review

Mr. Gozo's applications to proceed IFP indicate that, as a financial matter, he likely would be eligible to proceed IFP. But under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2).

When determining if a complaint states a claim for which a court may grant relief, a district court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)). While a complaint's factual allegations need not be detailed, they must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (citing authorities). A complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court's consideration of whether a pleading states a claim is "context-specific"; a court must "draw on its judicial experience and common sense." *Id.* at 679; *see also, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (making same points (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)) (cleaned up)). Courts should construe *pro se* complaints like Mr. Gozo's "'liberally,'" but such pleadings must still allege enough facts to support the claims advanced. *Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 741–42 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Furthermore, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction [over an action], the court must dismiss [it]."

**B.    Operative defendant list**

As a threshold point, the Court addresses Mr. Gozo's motions to amend. In the Court's view, the sum total of Mr. Gozo's various amendments do not affect the substnce of the Complaint—all that they seek to do is change the names provided for certain original defendants and then add certain other defendants. On the first point, for the original defendants, Mr. Gozo seeks to replace "Skillet Inc." with "Skillet Kitchen Inc."; the reference to KCJ's warden with Eric Tollefson; and the reference to KCJ itself with Kandiyohi County. (*See, e.g.*, Second Mot. to Amend 1.) As for new defendants, Mr. Gozo seeks to add the City of Wilmar, Minnesota (the site of the KCJ); the State of Minnesota; the

5

Department of Homeland Security itself (that is, not just Secretary Mayorkas); and Tim Walz, Minnesota's governor. (*See id.*)

It is not clear to the Court that Mr. Gozo has followed proper procedures for amending a pleading. (*See generally* L.R. 15.1.) But under the Federal Rules of Civil Procedure, a district court should permit a first amendment "as a matter of course," and should generally "freely give leave to amend when justice so requires" thereafter. Fed. R. Civ. P. 15(a). For present purposes, then, the Court will grant the Motion to Amend and Amendment to the extent that they seek to change this action's defendant list. Going forward, then, this action's defendants are (1) Skillet Kitchen Inc.; (2) Eric Tollefson; (3) Kandiyohi County; (4) Alejandro Mayorkas; (5) the City of Willmar; (6) the State of Minnesota; (7) the U.S. Department of Homeland Security; and (8) Tim Walz. The Court construes Mr. Gozo as seeking to press claims against all these defendants on the basis of the material provided in the original Complaint—in other words, the Complaint's allegations and proposed causes of action reflect Mr. Gozo's claims about how *all* the defendants here are liable to him, including the defendants added by Mr. Gozo's later amendments.

Given this resolution, the Court denies the Second Motion to Amend as moot.

**C.     Mootness**

Mr. Gozo's move to Texas—and out of ICE custody—raises a question of mootness. Under Article III of the U.S. Constitution, the federal district courts' jurisdiction is limited to certain "[c]ases" and "[c]ontroversies." *See* U.S. Const. art. III, § 2. The U.S. Supreme Court has interpreted this requirement to mean that "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the

issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) (cleaned up)); *see also, e.g.*, *Rinne v. Camden Cnty.*, 65 F.4th 378, 385 (8th Cir. 2023) (quoting *Already*). And caselaw indicates that mootness applies on an issue-by-issue basis: in other words, particular issues in a case can become moot without divesting the court of jurisdiction over the remainder. *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 497 (1969) ("Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." (citing authorities)); *Koester ex rel. Koester v. Wellsville-Middletown R-1 Sch. Dist.*, 960 F.2d 69, 71 (8th Cir. 1992) (citing *Powell*).[1]

The Complaint asks for certain injunctive relief, but Mr. Gozo is no longer at the KCJ, or even (apparently) in ICE detention. The upshot is that his injunctive-relief requests are moot. *See, e.g.*, *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." (citing *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1987)); *Brenizer v. Cnty. of Sherburne*, No. CV 21-1301(DSD/TNL), 2023 WL 7168840, at *8 (D. Minn. Oct. 31, 2023) (quoting *Martin*). The Court therefore recommends

---

[1] A court must consider mootness issues *sua sponte*. *See, e.g.*, *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) (quoting *Bacon v. Neer*, 631 F.3d 875, 877 (8th Cir. 2011)); *Munt v. Schnell*, No. 19-CV-1142 (NEB/ECW), 2020 WL 4382811, at *11 (D. Minn. July 31, 2020).

dismissing the Complaint, for lack or jurisdiction, to the extent that it seeks injunctive relief. What remains, then, are solely the Complaint's damages claims.

### D. Capacity considerations

As the above discussion indicates, the Complaint (after amendment) names three individual defendants: Tollefson, Mayorkas, and Walz. Nothing in the complaint specifies the capacity in which Mr. Gozo means to sue these three individuals (e.g., in their individual capacities, official capacities, or both). As a result, the Court construes Mr. Gozo as suing all three individuals in their official capacities only. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) (citing cases); *Mondor v. Schnell*, No. 23-CV-2511 (NEB/DJF), 2024 WL 551291, at *1 (D. Minn. Feb. 11, 2024) (citing *Egerdahl*). Mr. Gozo's claims against Tollefson, Mayorkas, and Walz are therefore official-capacity claims.

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing government entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007)); *see also, e.g.*, *Parson v. Barney*, No. 12-CV-0646 (DWF/DJF), 2023 WL 5447287, at *5 (D. Minn. Aug. 24, 2023) (making same point (citing *Veatch*)), *R. & R. adopted*, 2023 WL 6387869 (D. Minn. Sept. 29, 2023). The Court therefore construes the Complaint's claims against Tollefson, Mayorkas, and Walz as claims against (respectively) Kandiyohi County, the United States, and the State of Minnesota.

### E. Claims against the United States

The Court will turn to the Complaint's claims against the United States and its agencies first. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (citing authorities); *see also, e.g.*, *In re Russell*, 155 F.3d 1012, 1012 (8th Cir. 1998) (making same point (citing *Mitchell*)). *Mitchell* speaks of the United States itself, but the point applies to federal agencies as well. *See, e.g.*, *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Show Me State Premium Homes, LLC v. McDonnell*, 74 F.4th 911, 913 n.2 (8th Cir. 2023) (per curiam) (citing *Meyer*). And it is a plaintiff's burden to show a waiver of sovereign immunity. *See, e.g.*, *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999)); *Nyanjega v. Douglas*, No. 17-CV-1685 (SRN/SER), 2019 WL 1150625, at *7 (D. Minn. Mar. 13, 2019) (quoting *V S Ltd. P'ship*), *aff'd*, 793 F. App'x 468 (8th Cir. 2020).

With respect to Mr. Gozo's RFRA and the First Amendment claims—and recall that only damages claims remain—the Complaint does nothing to suggest that the United States has waived its sovereign immunity. That arguably ends the matter, given Mr. Gozo has the burden of pleading on this point. But to close out the point: caselaw is clear that the United States has not consented to either sort of suit. *See, e.g.*, *Hardy v. Bureau of Prisons*, No. 18-CV-0794 (DSD/BRT), 2019 WL 3085963, at *4 (D. Minn. June 10, 2019) (stating that U.S. courts of appeals have "unanimously" held that RFRA does not permit damages claims "against the federal government"), *R. & R. adopted*, 2019 WL 3080916 (D. Minn.

July 15, 2019); *Hartje v. F.T.C.*, 106 F.3d 1406, 1408 (8th Cir. 1997) ("A *Bivens* action, which provides a cause of action for a constitutional violation, is only available against federal officers, not government entities. Therefore, the United States [is not a] proper *Bivens* defendant[] because of sovereign immunity." (citing cases)).[2]

For his RLUIPA claim, Mr. Gozo quotes a specific statutory provision, and perhaps he believes this is sufficient for him to meet his burden of showing a sovereign-immunity waiver. If so, though, the effort fails. The RLUIPA by design applies to state and local governments, not the federal government. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 714–17 (2005) (discussing history of RFRA and RLUIPA); *Hardy*, 2019 WL 3085963, at *4 (citing cases). This limited scope means that nothing in the RLUIPA plausibly reflects the United States's consent to be sued under that act.

In summary, the United States's sovereign immunity blocks Mr. Gozo's attempted claims against the United States, its agencies, and any federal-government officials sued in their official capacity. When sovereign immunity blocks a plaintiff's claim, a court should dismiss the claim for lack of jurisdiction. *See, e.g.*, *Carlson v. I.R.S.*, No. 12-CV-1367 (JNE/JJK), 2012 WL 6861353, at *4 (D. Minn. Dec. 4, 2012), *R. & R. adopted*, 2013 WL 160124 (D. Minn. Jan. 15, 2013), *aff'd*, 546 F. App'x 602 (8th Cir. 2013). The Court therefore recommends dismissing the Complaint without prejudice, for lack of jurisdiction, with

---

[2] To be sure, in *Tanzin v. Tanvir* the U.S. Supreme Court held that RFRA's wording permitted plaintiffs to sue—and seek damages from—federal-government officials sued in their *individual* capacities. 592 U.S. 43, 47, 52 (2020). But as discussed above, the Complaint fails to press any such individual-capacity claims.

respect to its claims against the Department of Homeland Security and Secretary Mayorkas.

### F.  Claims against the State of Minnesota

The Complaint's claims against the State of Minnesota and Governor Walz face a similar problem: that of *state* sovereign immunity. The U.S. Constitution's Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." While the wording here refers to suits by "[c]itizens of other states," caselaw is clear that the Eleventh Amendment also applies to suits against states brought by that state's own citizens. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing cases); *Balogh v. Lombardi*, 816 F.3d 536, 544 (8th Cir. 2016) (citing *Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997)). In other words, "the Eleventh Amendment generally bars suits by private citizens against a state in federal court." *Balogh*, 816 F.3d at 544 (same).

The upshot is that to bring his claims against the State of Minnesota or Governor Walz, Mr. Gozo must point to some exception to state sovereign immunity that lets this Court hear the claims. As relevant here, an exception applies when Congress passes a law abrogating state sovereign immunity. *See, e.g.*, *Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 35–36 (2012) (discussing abrogation); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996) (same). The question, then, is whether any of the statutes under which Mr. Gozo brings his claims strip states of their sovereign immunity.

For Mr. Gozo's constitutional claims, the relevant statute is 42 U.S.C. § 1983. *See, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." (citing cases)); *Johnson v. Sullivan*, No. 23-CV-2249 (KMM/LIB), 2023 WL 9507608, at *3 n.4 (D. Minn. Nov. 29, 2023) (citing *Azul-Pacifico*), *R. & R. adopted*, 2024 WL 406587 (D. Minn. Feb. 2, 2024). Caselaw is clear that plaintiffs cannot sue states under § 1983. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–67, 71 (1989); *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (citing *Will*). Mr. Gozo's constitutional claims against the State of Minnesota (including his official-capacity claims against Governor Walz) are therefore nonstarters. As for the RFRA, here Mr. Gozo faces the flipside of the problem he faces in trying to bring RLUIPA claims against the federal government: the RFRA does not apply to the states. *See, e.g.*, *Cutter*, 544 U.S. at 714–17 (discussing RFRA's history). And so Mr. Gozo's RFRA claims against the State of Minnesota and Governor Walz do not bypass state sovereign immunity.

This leaves Mr. Gozo's claims under RLUIPA. Under 42 U.S.C. § 2000cc-2(a), "[a] person may assert a violation of this chapter[3] as a claim or defense in a judicial proceeding and obtain *appropriate relief* against a government." (Emphasis added.) For a statute to

---

[3] Under § 2000cc-1(a), "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

abrogate state sovereign immunity, "Congress . . . must make its intent to abrogate sovereign immunity 'unmistakably clear in the language of the statute.'" *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)); *see also, e.g.*, *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 474 (8th Cir. 2018) (making same point (citing cases)). For present purposes, § 2000cc-2(a) retracts Minnesota's state sovereign immunity here only if "appropriate relief" makes "unmistakably clear" that a plaintiff can use the RLUIPA to sue a state for damages. And the Supreme Court has concluded that the wording is insufficient. *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011); *see also, e.g.*, *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1053 n.2 (8th Cir. 2020) (citing *Sossamon*).

In summary, state sovereign immunity bars all of Mr. Gozo's damages claims—under § 1983, the RFRA, and the RLUIPA—against the State of Minnesota, including his official-capacity claims against Governor Walz. The Court therefore recommends dismissing these claims without prejudice for lack of jurisdiction.

### G.     Claims against Skillet Kitchen Inc.

The Court also recommends dismissal of the Complaint's claims against Skillet Kitchen Inc. For Mr. Gozo's § 1983 claims, the problem is that § 1983 generally targets governmental conduct, not private activity. *See, e.g.*, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citing cases); *Campbell v. Reisch*, 986 F.3d 822, 824 (8th Cir. 2021) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). Numerous cases address whether a private actor's conduct related with public officials makes the private actor's conduct "state action" subject to § 1983. *See, e.g.*,

13

*Brentwood Acad.*, 531 U.S. at 295–98. Detailed analysis of that caselaw is unnecessary here, however, for the Complaint has no specific allegations about Skillet Kitchen's connections with relevant governmental actors. The Complaint therefore fails to state a § 1983 claim against Skillet Kitchen.

Mr. Gozo's failure to plead any connection between Skillet Kitchen and any governmental actors also dooms his attempt to bring RFRA and RLUIPA claims against it. Both the RFRA and RLUIPA explicitly permit plaintiffs to sue government entities. *See* 42 U.S.C. § 2000bb-1(a)–(b) (RFRA); *id.* § 2000cc-1(a) (RLUIPA); id. § 2000cc-2(a) (same). They say nothing of permitting private rights of action against nongovernmental entities. The Court therefore recommends dismissing the Complaint, for failure to state a claim, to the extent that it seeks to press RFRA claims and RLUIPA claims against Skillet Kitchen.

H.   **Claims against local-government entities**

The Court last turns to Mr. Gozo's claims against three local-government individuals and entities: Eric Tollefson, Kandiyohi County, and the City of Willmar. As a threshold point here, because these remaining defendants are all local governments (or local-government employees), the RFRA does not apply to them. The Court therefore recommends dismissing any such RFRA claims without prejudice for failure to state a claim.

This leaves the Complaint's claims under § 1983 and the RLUIPA. For both types of claims, as discussed above, the Complaint (as discussed above) brings only official-capacity claims. This has at least two relevant implications. First, because Tollefson is

14

Kandiyohi County's sheriff, Mr. Gozo's official-capacity claims against Tollefson are functionally claims against Kandiyohi County itself.

Second, the fact that the Complaint only levels official-capacity claims against these defendants dictates certain pleading requirements for any § 1983 claims. Under § 1983, "local government are responsible only for 'their own illegal acts'"; "[t]hey are not vicariously liable for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in *Pembaur*); *see also, e.g.*, *Aldridge v. City of St. Louis*, 75 F.4th 895, 901 (8th Cir. 2023) (quoting *Connick*). One upshot is that plaintiffs bringing § 1983 claims against local governments must point to some "municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing cases); *see also, e.g.*, *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (quoting *Brown*-reliant caselaw).

Numerous cases explain just what a plaintiff must allege to properly plead this sort of "policy" or "custom" claim. *See, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 800–02 (8th Cir. 2018) (discussing standards); *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214–17 (8th Cir. 2013) (same). But review of that caselaw proves unnecessary here, for the Complaint has no allegations suggesting any sort of policy or custom at issue. The Court therefore recommends dismissing the Complaint to the extent it seeks to bring § 1983 and RLUIPA claims against Tollefson, Kandiyohi County, and the City of Willmar.

## I. Remaining motions

Under the analysis above, the Court is recommending that the Complaint be dismissed in its entirety. Given this decision, the Court also recommends denying the Exhaustion Motion, Injunction Motion, and IFP Motions as moot.

## ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff Makusha Gozo's Motion to Amend to Emergency Motion for Injunctive Relief or Declaratory Relief (Dkt. 9) and Amendment to Emergency Motion for Injunctive or Declaratory Relief (Dkt. 11) are **GRANTED** as discussed above.

2. Mr. Gozo's Motion to Amend Defendant Names (Dkt. 13) is **DENIED** as moot.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. This action be **DISMISSED WITHOUT PREJUDICE**, as moot, to the extent it seeks to bring injunctive-relief claims.

2. This action be **DISMISSED WITHOUT PREJUDICE**, for lack of jurisdiction, to the extent it brings damages claims against Defendants Alejandro Mayorkas, Department of Homeland Security, the State of Minnesota, and Tim Walz.

3. This action be **DISMISSED WITHOUT PREJUDICE**, for failure to state a cause of action, against Defendants Skillet Kitchen Inc., Eric Tollefson, Kandiyohi County, and the City of Willmar.

4. Mr. Gozo's Motion for 42 USC 1997e(a) Exhaustion (Dkt. 3), Emergency Motion for Injunctive or Declaratory Relief received on April 10, 2024 (Dkt. 5), Motion to Proceed In Forma Pauperis (Dkt. 7), and second Motion to Proceed In Forma Pauperis (Dkt. 15) be **DENIED** as moot.

Dated: May 13, 2024         *s/ John F. Docherty*
                            JOHN F. DOCHERTY
                            United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).